I am. Good. Each side is allotted a total of 30 minutes and the counsel for the appellant may proceed. Thank you, Your Honor. Good afternoon, Your Honors. The grand jurors in the Southern District of California have the authority under Vasquez to charge a greater offense, a lesser offense, multiple counts or a single count, even a capital or a non-capital crime, or no crime at all, based upon the same set of facts. As Judge Kaczynski's dissent made clear, the instructions that are given seek to neutralize that discretion. Judge Kaczynski particularly relied upon the instruction that they cannot consider the wisdom of any law, but the instruction that tells them they cannot consider punishment or should not consider punishment, which is then immediately followed by the admonition that punishment is solely in the purview of the court, equally constrains their discretion. In addition, I think the instructions also incorrectly advise the grand jury of their role by repeatedly telling them that they're solely concerned with probable cause, that that's their only responsibility, the position that was taken in Judge Hawkins' dissent. Williams says that the grand jury is supposed to function as it traditionally did. That's what the Fifth Amendment guarantees. These instructions don't permit that traditional function and for that reason they are unconstitutional. Now I think one of the biggest hurdles that I have to overcome is there's frequently discussion about how the Vasquez opinion discussion of the grand jury's discretion and its powers is dicta and that's not really the case. I think that Vasquez has to be read in light of the Rose v. Mitchell case which preceded it in which the dissenting justices or the justices that didn't agree that there should be automatic reversal for discrimination in grand jury composition said that the whole error is cured if you have a non-discriminatorily composed pettit jury because if the grand jury only considers probable cause, then a properly constituted pettit jury, when it rules, it cures that because necessarily probable cause is found when you find guilt beyond a reasonable doubt. That was the issue that was raised in Rose v. Mitchell and not addressed head on, but it was addressed head on in Vasquez v. Hillary. Vasquez v. Hillary both restated the hundred year tradition of finding that that was a constitutional error, but also explained why it was harmful to the defendant so that after detailing the tremendous powers that the grand jury had, they were then able to say that's why there is prejudice in this case and they used some very specific language. They said we cannot know how the indictment would be framed if there was a properly constituted grand jury. Well, here we don't know how the indictment would have been framed if there was a properly instructed grand jury. They also said that we don't know how the grand jury would perceive the need to indict. If there was such a question as the need to indict, you wouldn't need to ask it if your only question was to answer whether or not there was probable cause. If there's probable cause, then you need to indict. But instead, the Supreme Court said that the jury has to consider that. The grand jury considers the need to indict. They have to do policy analysis. And that's basically the conclusion that Judge Kaczynski reached in his dissent. Are you seeking a nullification instruction? I'm not seeking a nullification instruction. I think that these instructions could be cured by saying that the grand jury can't indict unless there's probable cause. They could be cured by not repeatedly saying that probable cause is the only issue that's for the grand jury to consider. And they could be cured by deleting the instructions telling them that you can't consider the wisdom of any law and that you can't consider the punishment. That I think would cure the problem. And I think that grand jury nullification, which is another term that gets thrown about, is really a misnomer. When a prosecutor looks at a case and says, I can prove this case, but I'm not going to charge it, that's not prosecutorial nullification. Judge Kaczynski's dissent in the Varro Vargas notes that the grand jury performs a prosecutorial accusatorial role. So when they say, even if there's probable cause here, we're not going to return an indictment, that's not nullification. That's discretion. And it's appropriate discretion. And if you go back through the history, that's what popularized the grand jury. Because when it first started, it was no friends of the people who were being tried. It was a trial by ordeal. And ultimately, it's cases like the Shaftesbury case, the College case, the John Peter Zenger case, the cases involving the taxes during the Revolutionary period. Let me ask you about a case. Suppose Congress passes a law that says it's against the law to blow up an abortion clinic. Is it your view that a grand jury can consider the wisdom of that law in deciding whether or not to indict somebody? I think it is. If they chose to consider that, yes. And I think that that type of question, and there were very good points made in the Marcucci majority opinion, too. We're really talking about a policy decision. The framers decided to commit those types of decisions to average everyday people. And they trusted them to make good decisions. And we know from our history in the Republic that they didn't always make good decisions. But the bottom line is that that weighing, should we let grand juries make that kind of decision, was actually made by the framers. And they chose... How do we let Congress make that decision? Isn't that a congressional decision? Oh, it's a congressional decision to pass that type of statute. But I'm talking about committing a charging decision to the grand jury, as the framers did. Are you basically arguing that whatever a prosecutor could do as a matter of prosecutorial discretion, a grand juror could do with respect to grand jury discretion? Yes, for cases that are submitted to the grand jury. They have the discretion. And Vasquez makes... The answer to Judge Stoker's question would be if a prosecutor could do it, a grand juror could do it, and a grand juror could do it for other purposes, whether prosecutorial. Correct. Now, I heard you say you're not asking for a nullification instruction. In your view, would it be permissible to have a nullification instruction? I think it would be permissible. The law review article that was cited in Judge Kaczynski's dissent, the Simmons law review article, actually goes through an instruction that's given in New York. I think it would be permissible to give that. But that's not really what the issue is that we've raised in this case. We think that the grand jurors in the Southern District are improperly instructed, they're not told properly what their role is, and they're misled as to what their power is and the breadth of the concerns that they're... Why are they misled? Well, I think they're misled because the instruction tells them they cannot consider the wisdom of any law passed by Congress. Judge Kaczynski pointed out that it's practically impossible to separate evaluating the particular facts of a case from an evaluation of the wisdom of the law. I mean, for instance, let's say you have a medical marijuana case. You could say those are bad facts, but you could also say that 841 is a bad statute because it doesn't have an exception for that conduct. I just don't see the harm in the instructions that are given, because the grand jury is always able to decide, should we charge this person with violating this law? And that's a component of their decision to be requested. Well, I think the harm is that a judge has told them that they cannot take those kinds of facts into consideration. They cannot consider the wisdom of the law. They cannot consider the penalty. If the Supreme Court says they can charge a greater offense or a lesser offense, capital or non-capital, how are they to make that kind of decision if they can't consider what the penalty is? Ultimately, you're absolutely right that some grand jurors may ignore the instruction, but the fact that some grand jurors may ignore that kind of instruction doesn't mean that that kind of instruction should be given, because it trenches on their traditional discretion. Counsel, the President may question the validity or the good sense in a law by Congress at the time that he signs the bill, but a President who's stuck with a bill that was signed by a prior President may only decline to enforce it. And yet Article II of the Constitution says that the President shall, not even should, but shall take care that the laws are faithfully executed. And yet we have executive prerogatives exercised all the time that decline to prosecute. The President is independent there, not because the Constitution gives him the power to nullify, but because it makes him independent because there's nobody who can review the judgment. The grand jury here is similarly non-reviewable, and that's what makes it independent. We don't have to instruct the grand jury that it's independent. It simply is. And whatever it decides to do, the prosecutor can't come back and say, well, I've decided this is a really bad decision. I'm going to go get a district court to overrule you, or I'm going to go file the, you know, return the true bill anyway. So what's the problem here? The problem here is that the grand jurors are told that they cannot think certain things. Williams says that the district court does not preside over the grand jury. So when you tell the grand jury, look, there's some things you just can't even think. You can't think about the wisdom of a particular law. You can't think about the penalty provisions. When those types of instructions are given, we presume that jurors, grand jurors and regular jurors follow instructions. So they're specifically being told that they can't do things. But the whole tradition of the grand jury is independent, as your question has pointed out. And if they are so independent, how is it that a district court judge has the authority to tell them what they can and can't think? And there hasn't been a single case that's been cited throughout these proceedings, that is, throughout the litigation of this issue over a period of years in which there's ever been a source of the authority to tell the grand jury what they can and can't think. But we've cited cases from the Supreme Court and from various judges throughout the years saying that the grand jury has these powers, and yet these instructions would take them away. I mean, Judge Kaczynski said in his Navarro and Vargas dissent that it's practically impossible to exercise these powers if you're told you can't even consider the wisdom of a particular law. And then when you're talking about a greater offense or a lesser offense, it's impossible to evaluate whether or not you should charge the greater or the lesser if you're not allowed to consider what the punishment is. Counsel, in your brief, you say, longstanding precedent exists that grand jurors may consider both the wisdom of criminal law and punishment when deciding not to indict. You cite Williams versus United States versus Williams. That didn't have to do with any instruction, did it? It had to do with keeping Brady evidence out, right? Right. Williams has to do it. What cases can you cite us to that constitute longstanding precedent that grand jurors may consider the wisdom of criminal law? Do you have one? Well, I think Vasquez versus Hillary stands for that proposition. Vasquez didn't involve an instruction to a jury. But it involves the... It didn't tell the jury that the jury could not consider, could consider the wisdom of the law, did it? No, but the... But this litigation, I believe, has been the first case that's actually challenged the content... The longstanding precedent isn't so longstanding, nor is it precedent, right? Well, I think that it is longstanding precedent in terms of what the discretion that the grand jury has is. Have you seen what the judges charged in 1790 to grand juries in this country? They charged them over and over again that they had a duty to follow the law. They never said to them, you can make up the laws as you go along. You don't have to follow the neutrality declarations of President Washington. You don't have to follow the alias sedition laws. You can do whatever you please. That's not what they said to them. Where is your traditionally based discretion of the grand jury to ignore what the law says? Where is it? I think it comes both from the historical evidence, the circumstances, the college case, the John Peter Zenger case, the smuggling cases. Wait a minute. The college case took place in 17th century England, right? That's correct. We are now independent from England, right? For a few centuries. Where in America is there any tradition for what you say? Well, when Vasquez versus Hillary says that the grand jury has the right to basically to do whatever they choose on a certain set of facts, that's where the tradition comes from. They are saying in that case... I'm sorry. I thought it was dicta. No, it wasn't dicta. Number one, it wasn't dicta based upon the analysis I said before because they had to explain why they shouldn't abandon their automatic reversal rule when there's a grand jury composition issue. But even if it is dicta, this court's decision in Miller versus Gamming says that this court is not only bound by the Supreme Court's holdings, but also by its mode of analysis and its explication of the applicable legal rules. Well, certainly that language in Vasquez versus Hillary, if it's not a holding, which I think it is, it's definitely the mode of analysis and the explication of the rules that apply in that particular case. If the grand jury refuses to indict, does the government have any judicial remedy? They don't have a judicial remedy, but they could certainly submit the case to another grand jury. They cannot go to court and complain that the grand jury did something they shouldn't have done, right? No, they cannot. And maybe that explains why there's no precedent. I agree. I'd also like to discuss briefly, in addition to the Vasquez versus Hillary case, Judge Hawkins' dissent also cited to Justice O'Connor's mechanic concurrence, and that also talks about a dual role of the grand jury, first talking about probable cause, and then second talking about the protective function. I think that also supports our reading of Vasquez versus Hillary, as does Judge Wisdom's concurrence in the Cox case. Is there a dispute in this case actually over the grand jury's prerogative as opposed to over the instruction? I think there's a distinction there, and it seems to me that at least in large part, as I was understanding the dispute, there's not really a dispute about the grand jury's, or at least it hasn't been up until now, about what the grand jury's prerogatives are, but rather whether this instruction impedes it. Well, I think that the — So the precedent is really about what the grand jury's prerogatives are, but the interesting question is, to me, is what does this instruction do to impede the grand jury's prerogatives? If we assume that the grand jury's prerogatives are what's set forth in Vasquez versus Hillary, the instruction trenches upon those prerogatives in several ways. Number one, it tells them that it can't consider the wisdom of the law. That tells them that they can't consider whether or not it's a good idea or a bad idea, that a law criminalizes this particular conduct. Well, if they were told simply it's — as I understand it, a grand jury is an executive charging function, isn't it? So if they were told that it's the function of the legislative branch to make the laws and of the executive branch by the U.S. attorney that I represent, you represent, to enforce them, that would be perfectly accurate, wouldn't it? Yes. And that would really — wouldn't that really have the substance of what this is? That is, this is not your function to determine whether or not this law should have been passed. Well, I don't think that that's really what this instruction says. It says you can't consider the wisdom of the law. I mean, we know where the law is coming from. But if the grand jurors are going to look at a particular case and say, even though the facts seem to meet this statute, we're not going to indict, they can't do that if they think they're not allowed to consider the wisdom of the law. Well, they can do that. They can just choose not to indict. Well, but if they're going to be following the instructions, which we presume that they do, they would think that they could not consider the wisdom of this particular application of the law. These instructions lead them to believe that they are just basically performing the ministerial function of making probable cause determinations. How is this different from a pettit jury? Because the pettit jury is told to follow the law, even though we understand that the pettit jury has the power to nullify it. Well, it's different from a pettit jury in a number of ways. I think the most important way is that the district court presides over the trial, presides over the pettit jury, decides what evidence they hear, what evidence they can make of it. But that's not true with respect to the grand jury. William says that the court does not preside over the grand jury. They can consider hearsay. They can call their own witnesses. They can do whatever they want. So the grand jury is a completely different entity. It's not assigned to either branch, either the executive or the judicial, so they get to make their own decisions. They have their traditional independence, and they can make those types of decisions, whereas pettit juries are basically under the rule of the district court, and they have a traditional function. Judge Kaczynski drew the distinction between the two. We have to protect defendants' due process rights. We have to ensure the reliability of the results. And that's why the pettit jury is so much more subject to control by the court. But the grand jury is not under that control of the court, and so they have much more independence. Counsel, if this issue is framed as one of instructional error, does harmless error review apply? Harmless error doesn't apply for a number of reasons. Number one, because this is a type of error that basically goes to the lens that the grand jury looks through the case at. It's an error analogous to Sullivan in that all the grand jury's findings are subject to question, because we don't know what they would have done if they believed that they had their full discretion. It's different from an error like, say, a kneader-type error where a particular element, or a cotton-type error where a particular element is omitted from the grand jury. This basically goes to how they look at the entire case. The other important thing. Are you disregarding the other instructions that were given when you give that answer? I'm not disregarding the other instructions. I don't think that any instructions really cure the errors. They never tell them anything to cure the error that tells them that they can't consider the wisdom of the law. There's nothing in the instructions that cures the error that tells them they can't consider punishment. And, again, I think the instructions do tell them solely probable cause. But I think the second part to your answer is that throughout the history of the Supreme Court, the Supreme Court has said, we're not going to put ourselves in the grand jury's shoes and decide what they would have thought. Vasquez says we simply cannot know that the need to indict would be assessed the same way. Russell says we refuse to make a subsequent guess at what was. There may be an obvious answer to this, but does there make any difference if Vasquez said Justice White didn't join one paragraph, so there's not a majority issue in that one paragraph? Is that the key paragraph after this question? I don't think it is. I think the paragraph before it and the paragraph after it are the key. But, I mean, I agree that that's an odd little twist in the case. But the paragraphs that I rely upon to set out the grand jury's powers are the paragraph immediately before the one you're talking about, and then the one that says that they have to assess the need to indict is the paragraph that comes immediately afterwards. So there is a solid Supreme Court majority for the description of the grand jury's prerogatives. That's true, but I'm in key as to the structural error question. I don't think that it is, because going back to the cases that I was talking about a moment ago, Russell, Styrone, Bain, they repeatedly say that no court can say what the grand jury would have done. And if the only issue was probable cause, then any court could say what the grand jury would have done, because courts are in a much better position to evaluate probable cause, presumably, than grand jurors. So if it was just probable cause, then they wouldn't be saying over and over again, we can't put ourselves in the grand jury's shoes. And the reason is, is they have all this additional power. The judges don't have prosecutorial discretion. They don't get to decide, well, if we can make the case, we're not going to do it. That's why the Supreme Court repeatedly says we're not going to put ourselves in the grand jury's shoes. And realistically, we know from grand jury behavior that it's unlikely that they will refuse to indict. That is to say, if the question is what would they have done absent the instruction, well, they usually indict. They usually, certainly they do. The statistics cited in the Simmons case indicate that it's 99% over 99% of the cases there are indictments. So there is plenty of room, I think, for some grand jury independence. Massive reversals. No, it's not. It's not going to lead to massive reversals. I cited the Tillett v. Henderson case, which says that grand jury-type challenges are waived by a guilty plea. So I think that the 97% of cases that are resolved by guilty pleas would be completely unaffected. I think a plain error analysis would probably apply under Cotton. So we're really talking about the cases where people have actually raised this issue and are pursuing it. So I don't think there will be a tremendous number of reversals. I see. So even on direct appeal, you're saying that unless it's been raised, it's plain error, which requires a showing of harm, and that's probably not going to be enough. I think that's the way it's going to shake out. Are you going to address the laudatory comments made by the court to the prosecutors? I think that we did challenge those comments below. I'd like to hear what you have to say on that subject. Looking at page 23 of the record, where the judge instructing the grand jury, after referring to the assistance, that the special attorney in the assistance will provide states, if past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorney. And then you turn to page 27, and then the judge goes on, starting at line 12, and he says, I want to introduce you to one another person, Barbara Townsend of the United States Attorney's Office, with whom you will be working closely in the future. Before that, he introduced Robert Stewart, another assistant. And he says, these two wonderful public servants are here to assist you in the discharge of your duty. What's always bothered me is that, on one hand, we tell grand juries that they're the shield between the government and the people. And on the other hand, we tell them how wonderful the government is and how they can trust everything the government says. And just from my experience, and I've been around for a long time, I only know of two grand juries that ever returned a no bill. And one of them was the first year I was on the district court, either 67 or 68. And the other one was the refusal of a grand jury to return a true bill involving Harry Claiborne. And then the government went to, I think, two other jurisdictions. And finally, at the third, I think it was up in Spokane, got an indictment on a So I think that the decision to go before a grand jury, you're almost positive that there's going to be an indictment. And the conviction rate in federal court, at least in Los Angeles, is very, very high. It's probably around the 98% mark. I'm talking about trials. So I think that language is something that needs to be looked at. I agree. I think that, in general, the entire instruction trenches upon the independence of the grand jury. And certainly those comments have a negative effect on urging them to behave independently. Did you raise that in the blue brief? Or was that something you abandoned at this level? Well, Your Honor, we didn't put that in the petition for re-hearing, but we did incorporate the Marcucci dissent, I believe, in the opening brief. And that was one of the issues that was discussed in Marcucci. I understood that the instructions you were objecting to had to do with the wisdom of the law of punishment and the instruction that they're supposed to only consider probable cause. I don't see here where you are objecting to the law of those comments. It's in Judge Hawkins' dissent. No, I know it's in his dissent. I'm talking about your brief. Right, right. And he objects to it. And Judge Kaczynski said he adopted Judge Hawkins' dissent, and I said I adopted Judge Hawkins' dissent when I wrote the petition for re-hearing. So I think we've incorporated those comments by reference, and that's one of the issues that's raised in them. So I think that we have raised it.  Judge Hawkins' dissent. Right. Right. I'd like to do a follow-up to that. Unless the Court has any further questions, I'd like to reserve the rest of my time for rebuttal. You may. Thank you. May it please the Court, Patrick O'Toole on behalf of the United States. In this particular case, I'd like to beg the Court's indulgence to simply read from the California Supreme Court in Williams for approximately 15 seconds. Although the early history of our country includes the occasional Zinger trial or acquittals in fugitive slave cases, more recent history presents numerous and notorious examples of jurors nullifying cases that reveal the destructive potential of a practice rightly termed a sabotage of justice. And the Court gave examples. The Court noted that jury nullification included acquittals by all-white southern juries of white defendants who killed, assaulted, or harassed civil rights activists or African Americans generally. I want to start off with that because this is a case where I almost felt like standing up and saying, I don't simply represent the United States, but I can.  We should have a jury nullification case, pure and simple. Can a federal prosecutor charge a felony crime without presenting it to the grand jury? No, Your Honor, we can't. We can charge misdemeanors. May I finish my question? Yes, I'm sorry. Why is that? I believe under the Constitution, the grand jury has to return an indictment for punishment in excess of one year. Here we can present an information charging misdemeanors without bypassing the grand jury. And as a matter of fact, I think in the Zinger case itself, if I remember correctly from rereading part of it, the grand jury initially refused to indict and then the government presented an information and Zinger was tried on the information and the petite jury acquitted. What in the government's view is the purpose of the requirement of grand jury presentment in the bill of rights? I believe the constitutional protection and the requirement is to have the defendant have his peers decide on whether he should stand trial on a charge. It should not be the government, it should not be the U.S. Attorney's Office on a felony charge. It should not be the U.S. Attorney's Office. It should not be a law enforcement officer who has decided simply that there is probable cause to arrest, but that we have the grand jury to serve as a buttress, as a protection, as an independent body to decide that probable cause issue. That provision doesn't exist in most state constitutions, does it? I'm not sure if it exists in the state constitutions. Tell the in-bank panel whether it exists in California. I can't. I don't know that. You agree it's unusual in the sense that it's a constitutional requirement that places the will of the people in between the desire of the prosecutor to charge and his or her ability to use them. It does that, and I think it is a good thing that it does that, because it's – you have two protections. You have – ultimately, you have the petite jury. With all of the panoply of constitutional rights and protections, and particularly with the presumption of innocence and the requirement that government proves a case beyond a reasonable doubt. But it is no small thing for a person to be charged and have to stand trial. And because of that, the framers put in the requirement of an independent grand jury to decide that, not – If it was the first Congress, it wasn't the framers. I think the cases – Go ahead. By no means know nearly as much constitutional law or history as Your Honor. I think a couple of cases spoke of it as the framers. But I believe that's the reason for the requirement. But in this particular case, I think there's a couple of points that are very important. Counsel for Navarro Vargas here now says that the issues are the wisdom of the law and punishment, and whether the grand jury was correctly instructed in that regard. But I do note that in the motion papers that were filed in the district court, his objection at ER page 6 was a failure to advise the grand jurors of their historical power to refuse to indict. So the issue as framed in the district court also had jury nullification. You can't be any plainer than that. Failed to advise the grand jurors of their historical power to refuse to indict. In the original brief that was filed, I also note, too, that the objection in the district court was two forms of vouching. And I think this is an opportunity, frankly, for this court and bank to clear up some problems and to assert how the practice should be. The attack in the district court, or the argument in the district court, was that there was vouching for the prosecutor when you had the provision that talks about, you know, you can expect candor and honesty from the United States attorney. And then they also, there was a vouching for probable cause attack, because they said that in the standard instruction, when the grand jury is advised that basically a magistrate judge has already passed on probable cause, that that is vouching for the probable cause termination. In a sense, it puts the judicial thumbprint on the particular balance that the grand jury has to engage in. Now, in the brief itself, those things weren't mentioned. Judge Silverman, you asked the question whether it was waived or not. All I know is, in rereading this, at page 5 of appellant's opening brief, the three issues were must indict at probable cause, wisdom of laws, and punishment. There was no discussion in the appellant's opening brief of either vouching, vouching for the prosecutor, or vouching by the probable cause termination, nor was there the same specific reference to grand jury nullification, except that at pages 14 to 16 of appellant's opening brief, there was a discussion of nullification. I think that that's important for two reasons. One, whenever you're questioning the wisdom of the law, and if the grand jury is advised that it has the right to question the wisdom of the law, that is nullification, a form of nullification. But these questions go to, at least, that ultimate remedy if there was a problem with this instruction. And the opponent has given us his view that there don't have to be nullification instructions, but it's something you can grapple with afterwards. There's a prior question, which is, is there something wrong with the instructions that are sitting there now? No. At least not to the objections that were raised. One could question whether the grand jury needs to be told that a Federal magistrate judge has already passed on the question of probable cause. But that, again, was not raised in appellant's brief. That's a form of vouching, although I know it's being raised in district court time and time again, but that's going to be for this Court, whether it thinks that issue has been preserved. We're here to reconsider the panel decision in Navarro-Vargas, right? I think it's for you to tell me why you're here. We took the panel decision in vain, right? That's correct. And Navarro-Vargas relies upon Marcucci, right? Right. And all of the issues you're talking about now are discussed in Marcucci, right? I know that the vouching issue relative to the prosecutor you could expect, Kander was raised in Marcucci. I'm not sure whether the vouching issue was raised in Marcucci relative to the other panel. But it should shall issue be raised, right? Yes. And this in-bank panel is free if it wishes to reconsider not only the Navarro-Vargas panel opinion, but Marcucci, upon which it relies, right? I think not only yes. In fact, that's one of the positions I want to make, because in Marcucci, and Your Honor knows it better than I, but the majority part of Marcucci at that time is being heard in-bank, specifically said that the grand jury need not be given a nullification instruction. In the meantime, after Navarro-Vargas, this Court in another published opinion, Rivera-Cias at 376 F3D 887 at page 893-894, said the Marcucci issue is involved here specifically to the issue of not instructing the grand jury that it could refuse to indict. So I think that that nullification issue that was presented originally in Marcucci, that was discussed by the dissent in Navarro-Vargas and has been raised subsequently by the panel in Rivera-Cias is here. And that's why this particular case is so important, because I think it speaks to us as to what kind of system that we're going to have and what the grand jury is going to do. My objection to the instruction is that the instruction doesn't go far enough. Not only should the grand jury be instructed that it should not consider punishment and that it cannot consider the wisdom of the law, the grand jury should be instructed that it should not consider anything that is irrelevant to probable cause. That's what the instruction should be. 99 percent is not good enough for you? No, not because of that. Actually, just the opposite, Your Honor. For example, let's say it's a case where the probable cause question is pretty thin. There's reasonable suspicion, but probable cause is a closed issue. It's a case where the government is alleging a violation of 18- It's a probable cause standard in the Constitution. No, it's not. Thank you, Your Honor. I was going to say I thought that I saw that you had to have probable cause before an indictment could be returned, but I accept your no. So where is it coming from? No person shall be held to answer for capital or otherwise infamous crime unless I present mere indictment of a grand jury. I'm expecting that that was what the legal requirement was at the time the Constitution was adopted, and that it was incorporated into, you know, basically due process relative to that. But it's a due process requirement that it can't be held unless there's probable cause, but the notion that that's the only issue certainly doesn't have a textual basis in the Constitution. No, I would agree with that, but- But that's what you're arguing here, very vigorously. Well, I think that's-I mean, I think the difference between the grand jury and the petite jury, I think they're both the conscience of the community. I think the difference that they serve is that the grand jury is involved in a protective capacity earlier and with different rules that govern what kind of evidence that they can hear and what they do. Counsel, so if I'm hearing you correctly, you think it's impermissible for the grand jury to nullify a law or to consider the wisdom of a law, but it's permissible for the petite jury to do so? I think that it is impermissible for either one to do it, but each one has the power to do it. The distinction that I think the cases have drawn-I mean, the Supreme Court itself, when it talks about jury nullification, in Harris v. Rivera, says, jury nullification is the unreviewable power of a jury to return a not guilty verdict for impermissible reasons. A petite jury can do that and has done that. Let me just ask you a question. This is Judge Braggerson. You know, I could be way off on this, but at the time the Constitution was passed, is it not true that the jury was the ultimate arbiter of both the law and the facts? I've read that someplace. I think that I've read that someplace also, Your Honor, but I'm not sure where. Maybe in the Federalist Papers. I don't know that I've been reading those lately, but I accept, and like everyone else, I like the result in the Peter Zinger case. I said that was just a joke. It's probably in the Tocqueville. Again, but the problem with jury nullification-I want to get back to this because I think it's a very important argument. We all think that this is something that's just going to benefit a defendant. I suggest to you that that is not the case. Once the grand jury is told that it can ignore the law or decide for itself what the law should be or it can decide the probable cause issue based on facts that are irrelevant to probable cause, that can work as much harm against a defendant as for a defendant. I don't hear your opponent arguing the position that you're now arguing. I specifically asked him in his presentation if he sought a nullification instruction. He said no. And their briefs make clear that they're not looking for an instruction of the type that you're now arguing about. Are you arguing about a non-issue? Well, Your Honor, in Marcucci's dissent, there was discussion of nullification instruction. Judge Kaczynski and I argued Navarro-Vargas, and his dissent suggested that it would be a good thing for the grand jury to question the wisdom of the law. Questioning the wisdom of the law is nullification. That is a form of a nullification, pure and simple. Do you accept that there's a difference between not being told that they cannot consider the wisdom of law and being told that they should ignore the wisdom of the law? Is there a difference? I think that there is a difference, but I think that ultimately I've appeared in front of the grand jury hundreds of times. So I present a case in front of the grand jury, and let's say that it is a case involving a civil rights prosecution. And you have somebody that's illegally in the United States who happens to be a member of a minority group. He happens to be Hispanic. And the government's charging an agent with having beaten this person up or used undue force under color of law based on his nationality. And the grand juror raises their hand and says, well, you know, we don't think that's a good law. Can we ignore that? Because we think that somebody who, and we want to know if the person's legally here or not, which really doesn't really affect whether you have violated the law because if you're doing it based on the person's race or ethnic origin, they could be legally here and it's still a violation of law. I tried that case, and Judge Schroeder affirmed it. That would be very good. And I have tried those cases. But do we want the grand jury to be told, oh, that's fine, you can ignore that law, you can disregard that law. It's up to you to decide whether Congress in its infinite wisdom should have passed that law or not. And I suggest no. But I want to get back to this one question if I can. Let me ask you a question first. You do have remedies in the event of a no true bill, don't you? Perhaps. You can represent it following Justice Department guidelines, right? And the example you gave of an all-white grand jury letting racist civil rights violators go is a perfect example of a case where the Department of Justice in a New York minute would give you permission to go to another grand jury, right? Well, there's a couple of difficulties to that. Am I right about what I just said? Can we take a case to another grand jury? Yes. Generally, we can't. We have to ‑‑ if I might finish, we have to have specific permission from the Department to take a case back to a grand jury. Under the situation that you hypothesized, I expect that it would be given. Now, it raised issues in my mind, for example, as to whether if the grand jury made a finding of no probable cause, which is the best definition of what a no bill is, as to whether that applies race judicata as to the government bringing a case back in front of another grand jury. I've never seen that issue raised, but it does seem to me that it raises issues of that kind. The United States Attorney's Manual, which contains the policies of the Department of which you get permission to represent to a second grand jury, they've been there for at least 35 or 40 years, and I surmise they wouldn't be there if the Department had historically not felt that it was perfectly legal to do so. Wouldn't you agree? I served as United States Attorney. I am familiar with the United States Attorney's Manual. I have never seen a case that was presented to another grand jury after a no bill. We've not done it as far as I know. I'm aware of no litigation involving the issue as to whether if one grand jury returns a no bill, as to whether there's a race judicata problem or a legal impediment to that second one. But the point I'm trying to make still is that we have a case with thin probable cause, or it doesn't exist at all. Do we want a grand jury to be asking questions that will prejudice the defendant in the same way? Or can that grand jury disregard the probable cause requirement and say, well, this guy's really a bad man? And even though we don't think there's probable cause, we're going to return an indictment against him because we want to disregard that. We want to make that up as it goes. Now, that's not the request that he's making. No, it's not the request that he's making. But where does it stop? When you tell the grand jury that they have – that's the request. Let me start out from this point. You're trying to get us to buy into the proposition that jury nullification by the pettit jury and jury nullification, if that's even the right word, by the grand jury are equivalent. Now, I take it as a given. I'll start out where you started out with your quotation from the Williams case, that jury nullification by the jury is improper behavior that we tolerate, that we keep within the system. It is in the power of the jury, but it is not proper behavior. Correct. That's sort of a safety valve. I agree. But the function of the grand jury is not determination of guilt. The function of the grand jury, which is served quite imperfectly but nonetheless served, is to protect the citizen who is about to be charged from the power of the State. It is not to determine whether there is guilt or there is innocence. And I'm not sure that nullification is even the proper word when the grand jury is exercising that function. And I'm not sure that the grand jury is acting improperly if it refuses to indict even when there is probable cause. I would disagree. I mean, you ultimately will decide the case. I think it is impermissible. Ultimately, there – of course, it's okay for a prosecutor to not go to the grand jury with something that has probable cause. That's correct. Because we make the initial charging decision. So you are basically positing that the protection is in the prosecutor, not in the grand jury, in terms of factors other than probable cause. And where is that coming from, the fact that there is all the discretion of the prosecutor and none in the grand jury? Where it comes from is prosecutors historically have had the power and the obligation to make the decision as to whether to charge somebody in the first instance. But do we want the grand jury advised that it can disregard the law, that it can make up the law as it goes? I mean, what's to keep the grand jury then from saying – I don't know the answer to this, but the answer – were there prosecutors or did the grand jury just decide – no, I'm fine. I thought I read the grand jury just went and found crimes by themselves and decided whether to prosecute them. Originally, historically, in colonial times, you know, in England, perhaps so. I mean, there's been an evolution. But the grand jury's role, primary role for decades on decades, has been to independently decide the probable cause issue. It would be impermissible, for example, for a grand jury to decide we think that's too low a standard. We want to apply the standard and we're not going to indict unless it's preponderance of the evidence or clear and convincing evidence or proof beyond a reasonable doubt. That would be impermissible for the grand jury to do it. Now, if the grand jury's in secret, with nobody being there, if they decide to do that, they can do that. They have the power to do it. But no court ever, ever in the history of this country has sanctioned the giving of an instruction that says you can disregard the law. All right. But what if you just – It's an affirmative instruction. Yeah. The point I was going to make is that they're not asking for that affirmative instruction. They're just asking that the language that you should not consider the wisdom of the law be deleted. Okay. You're saying there's no difference? Well, no, there is a difference. But that's a fundamental shift. I mean, that's one of the difficulties with this case. That's the question. Okay. If that's the question, the grand jury deserves guidance at the very first part of it, at ER 14. First of all, the grand jury's given an oath which says they will not indict through hatred, malice, or ill will, nor not indict through fear, favor, or affection. Then the court comes in, ER 15. It is the court's responsibility to instruct you as to the law which should govern your actions and your deliberations as grand jurors. So let's say, okay, there's no instruction at all. The grand jury's here, and it's a case dealing with a civil rights violation. Again, somebody who's illegally in the country. And the grand juror raises his hand and says, Mr. O'Toole, what if we don't like that law? What are we supposed to do? What if we disagree with that law? What guidance can you give us? What if we think that there's probable cause, but we think that we should apply a higher standard? What if they think that there is probable cause, but this is a very young guy and he's never done anything wrong before, and they don't think he should be indicted because, as a prosecutor, could and often does do? If by themselves, in secret, they decide not to indict the case, that's fine. But as pointed out by, in fact, this Court, the Ninth Circuit case, I believe, was either the one or the other. I think it was impermissible for them to do. If they do it, they're doing it in dereliction of their duty. Are they doing it in dereliction of their duty? I think they are doing it in dereliction of their duty. And what case law do you have that says that's in dereliction of their duty? We understand they do it, and we understand they can do it, not very often, but they can. What case do you have that says it's in dereliction of their duty when they do that? I would cite the Thomas case, Your Honor. No right to a jury instruction advising jurors of the power to disregard their oaths in sworn duty. Trial courts have a duty to prevent such conduct. Are you talking – is this a pedigree case? Yes, it's a pedigree case. I'm talking about the grand jury. Well, that's where the litigation has been in the pedigree context. Well, I'm asking you a case about the grand jury, and you're giving me a pedigree case. Do you have a grand jury case? I'm giving you a nullification case. I understand that. I am asking you about the grand jury. And I have told you my view, at least my tentative view, and that is that the grand jury is different from the pedigree. And I'm asking you for a grand jury case. Do you have one? No. Okay. And there's a reason for that. The reason for that is because grand jury litigation almost is nonexistent. We've had – they cite Vasquez v. Hillary, over 20 years – 20 years old. That language was never used. I mean, do we think all of a sudden in the year 2004, when the grand jury has been given a certain instruction, a certain oath for decades, that all of a sudden this issue pops up? Do you – what is the history of this particular instruction? When did it first – when was it first given? Do we know that? I don't know when it was first given. I know that – I can tell you I've been practicing for 22 years. This instruction has been given ever since I've ever appeared in front of the grand jury. So it goes back at least that time period. And I have no reason to think that it was something that started off in 1982 when I went to work for the government. Is this instruction given universally throughout the country? I believe that it is, Your Honor. Well, I mean, I've seen this instruction before. I thought it was limited to San Diego. I mean, does L.A. give the – does the central district give the same instruction? What I can tell you is this, that this instruction almost tracks verbatim the model instruction that is promulgated. By the Department of Justice? No, no, not by the Department – you can't blame this one on us. It's by the arm of the court. The AO. The Administrative Office of the Court. That's where this comes from. Oh, this is from the AO? AO? It doesn't come from us. AO, that's right. It does come from the AO, but I don't think there are too many courts in this country that are using that instruction. I'm not sure. As I know, only San Diego uses it. No, I don't think that's the case, Your Honor. I can see no reason why we would be using a model instruction and other people that wouldn't. The only model instruction that I'm aware of is this particular instruction. Well, do you know for sure that it is used in Los Angeles in the central district? I don't know for a fact, Your Honor. I believe that it is used or something similar to it. But the point I want to get back to is this. You're saying, all right, the defense is saying we're not asking for an affirmative instruction. We're no longer asking for the jury to be instructed that it need not indict if there's probable cause because they're the conscience of the community. No longer asking. Were they ever? I'm sorry? You're saying they no longer are asking for that. Were they ever asking for that? Absolutely. That's Marcucci, yes, Rivera-Silas, 2004. I'm talking about the litigants in this case. Were they ever? Yes. No, yes. So can I just ask you a question I'm very curious about that struck me, and it's along the lines of Judge Fletcher's question, which is aren't the oaths that the grand jurors take and that a pettit juror takes different? Don't they deal with any of these? My recollection tells me that when I instructed a pettit juror, I instructed them, no, when I gave them their oath, they took an oath to follow the law. They took an oath that they would apply the law as they were instructed by the judge to the facts of the case. But the grand jury takes a different kind of oath. It's more about ill will and bias or prejudice. Does that have any significance in this case? I would like somebody to explain frankly what the grand jury oath really means. I'll read it again. The grand jury oath is that the grand jurors should not indict through hatred, malice, or ill will, nor not indict through fear, favor, or affection. I mean, I think these are probably very old terms that had some specific meaning a long time ago and times have changed a little bit. But it's not an oath that you will faithfully apply the laws instructed by the judge to the facts that are before you. I would agree with Your Honor on that. I can't remember the exact words for that. Isn't that the oath that we give the petted juror? Yes. And I think the oaths are different. But the question remains, when the grand juror, I mean, do we want a system where the judge advises the grand juror of what the law is or not? And if we don't have the judge do it, we're going to have prosecutors that are responding to questions without guidance. For example, this is the question that you raised, Your Honor. Mr. O'Toole, we don't like this civil rights law. I didn't raise that question. My question was this is a very young person, and I think he just made a mistake, and I don't really think we need to indict him. Mr. O'Toole, do we need to indict him? I would answer the question this way, that you should indict him if you find there was probable cause to believe that he committed the offense. That's how I would answer the question. The same way, if it's somebody – the question that's posed in the grand jury all of the time is not so much that. And Judge Kuczynski asked me the same question. Ninety percent of the time when I present a case in front of the grand jury, they've wanted to know what somebody's criminal record was. Most cases we prosecute, people have criminal records. They've been arrested for doing bad things. They've done bad things. And when the jury hears that, it's actually irrelevant to probable cause. And I won't tell the grand jury, or I won't allow them to hear it. And I've instructed the grand jury that I'm not going to give you that information, or I'm not going to let the witness answer that question, because it's irrelevant to probable cause. And you should not hold it against that defendant who's being charged on this insular crime based on something that he did before. Is that justice department practice, or is that just Mr. O'Toole? I think it's best practice. It is – It's the current justice department practice. What we're talking about is protecting the citizenry from abuses of prosecutorial discretion. Absolutely. And that is why the grand jury should be instructed that it should not consider anything that doesn't go to anything that is irrelevant to probable cause, both to protect the defendant on occasion so that a defendant in a thin case is not going to get indicted, not because of what he did, but because of who he is. In this case, the probable cause standard is a due process standard that the jury does have to be instructed on in one direction. That is, they cannot indict except if it's probable cause because it would be unconstitutional for someone to stand trial except on probable cause. That's right. So there's no doubt that they have to be instructed in that direction, but the opposite direction seems to have no basis in the Constitution or in the role of the grand jury under the Constitution, as far as I can tell. Where is it coming from? I think it is part of the body of law that we incorporated, you know, from England at the time of the Revolution. But, for example – You seem to say before that isn't so, because there didn't used to be a prosecutor at all, and the grand jury was the one that decided who to prosecute, whoever they decided, just the way prosecutors do. But I think they still did it based on probable cause. Your time is running out, apologies, but I'd like to ask one last question. Sure. I think it follows up on Judge Berzon's question, and that is, as I understand your permission, your position, it is impermissible for the grand jury to be merciful if there is probable cause. They have the power to do so. No, I know they have the power to do that. I mean, it is improper for them to exercise the power to be merciful if there is probable cause. Is that your position? I'd answer the question this way if I can. They have the power to do so, and on occasion it is probably a good thing when they do that. The Zinger case was a good example of it. But it's nonetheless improper in your view? They should not be specifically instructed as to that. That's not the question. Do they need to be instructed that they can't? That's the question. I believe so. I believe so. Okay. Your time has expired. Thank you very much. Just to be clear, I don't want a nullification instruction. I mean, I might want it in a general sense, but we're not asking for it today. In the next case? Yeah, I may be back some other day. Logically, follow on from that. Today, we just want these instructions changed so they don't mislead the grand jury as to their powers. Now, as to a couple of the points, I never heard from Mr. O'Toole how his proposal to have the grand jury squares with the powers that the grand jury has under Vasquez v. Hillary. It just doesn't seem to track. I mean, how are they supposed to make these decisions as to whether it's going to be a lesser count or a greater count, multiple counts or a single count if they're told they can't consider anything but probable cause? Now, with respect to submission to a second grand jury, there's no legal impediment. If they get a no bill, there's no legal impediment to them to submit the case to another grand jury. So there's no issue there. Now, with respect to the other parade of horribles, what if they indict people who shouldn't be indicted because the grand jury is prejudiced against them? Well, that's the facts of the Cox case. And in the Cox case, the Fifth Circuit held that the prosecutor doesn't have to sign the indictment. So if a prejudiced grand jury returns an indictment that never should have been returned, then it's up to Mr. O'Toole and his office not to sign it. That's the check against that type of misbehavior by the grand jury. So that's not a problem either. I mean, ultimately, the grand jury doesn't need to be told what to think. And if I could just leave the Court with one last quote from learned hand in the Kittle case, which is cited in Judge Hawkins' dissent and I think also by Judge Friendly and the Chiambrone, it says, He best serves the Constitution who most faithfully follows its historical significance, not he who by verbal pedantry tries a priori to formulate its limitations and its extent. The grand jury just needs to be left alone. They don't need to be told what they can't think. And that's what the problem is with these instructions. They need to be told what they can't think, i.e., they can't prosecute if there is a probable cause. Right. There are some things they need to know. They need to know about the probable cause requirement. They need to know about a quorum. Some are other than the grand jury requirements. Right. But they don't need to be told what they can't think about the laws and what they can't think about penalties. Otherwise, they would. Mr. O'Toole raises the next question. So you don't say anything. And then there's a question from the grand jury that says, Well, I need to know if I think this law is wrong or if I think the prosecution is abusing its discretion in this case, can I return a no to bail? And they will ask. So at that point, what is the district court judge supposed to say? Well, the district court judge doesn't preside over the grand jury. Whoever is presiding. But I think Mr. O'Toole, as the vigorous advocate that he is, would advocate in favor of the position that he's advancing in an ex parte proceeding. I think that he's going to be in a good position to try to persuade the grand jury to his view. What should Mr. O'Toole say if the grand jury says, May I take the race of the victim into account? Can I think about the race of the victim? Well, I think that Mr. O'Toole should urge them not to do that. But I don't think that you can tell the grand jury what they can and can't think. I think that ultimately these decisions are committed to them as the conscience of the community. That was the decision that was made at the time of the founding. And ultimately we have to live with their good decisions as we do with their bad decisions. That's the decision that was made. But in the context of that question, it has to be they can't do it because it would be impermissible for them to do it. But that's a different question from whether they can take somebody's youth into account. That's correct. The answer to that one is no, you can't do that. I think we do tell them what to do. But they can't. If a grand jury decides not to indict because they don't like blacks since Mississippi in 1960, don't they have the power to do that? They do have the power to do that. That's not our problem. They have the power to do something, but it may not be what we want them to do. It may not be their function. And so I think that's the crux of our problem here today. They have the power to do it. It's unquestioned. But do we want to tell them that or do we want to leave that suggestion in their mind by silence? Ultimately, their function is to exercise their discretion as to whether or not a prosecution is going forward. They have to exercise that discretion. I admit that sometimes they have exercised it, unfortunately. But they are still in that role. It's a constitutional prerequisite to an infamous crime that they have to exercise that discretion, good or bad. I think they are told they have to respect constitutional privileges. Like the Fifth Amendment, they're told they can't hold. The prosecutor said I'm not going to prosecute this person because people do it secretly. We can't control it. But if we have any way of proving that a prosecutor decides to prosecute people based on their race, that's impermissible. It's not true, but it's impermissible, but it's permissible. Correct. I presume the same would be true here. I agree. All right. But you see that the prosecutor still is an elected official or a subordinate of an elected official, and the grand jury is not elected by any means. Well, the grand jury represents the community very directly. But not elected. They're not elected directly. Your time has expired. Thank you. That concludes the argument in this case. And it also concludes the court session. The court stands adjourned. Thank you. Thank you. Thank you.
judges: Schroeder, Pregerson, Hawkins, Silverman, Wardlaw, W. Fletcher, Berzon, Rawlinson, Clifton, Bybee, Bea